UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

WILLIAM FERNANDEZ, et al.,

                               Plaintiffs,

          -against-

SHARP MANAGEMENT CORP.,

                               Defendant.

-----------------------------------------------------------------X

16-CV-0551 (JGK)(SN)

**OPINION &ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/13/2016

**SARAH NETBURN, United States Magistrate Judge:**

       Plaintiffs William Fernandez and Rigoberto Santana (collectively, "plaintiffs"), former residential superintendent employees of Defendant Sharp Management Corporation ("Sharp Management"), brought a complaint alleging that Sharp Management failed to compensate plaintiffs and other similarly situated co-workers at an overtime rate for all hours worked in excess of 40 hours per workweek, and failed to pay the applicable minimum wage for all hours worked in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York Labor Law § 650 *et seq* ("NYLL"). Plaintiffs also allege that Sharp Management violated NYLL § 195(3) by willfully failing to furnish accurate wage statements.

       Plaintiffs move for conditional certification of a collective action pursuant to § 216(b) of the FLSA, 29 U.S.C. § 216 (b), for all persons who are or have been employed by Sharp Management as Resident Managers, Superintendents, Assistance Maintenance Personnel, Security Staff, Janitors, Porters, or "any other similar job title" at any location operated by Sharp Management everywhere in the United States during the past three years. Plaintiffs also request Court authorization to send their proposed Notice to all potential collective action members and

seek an order directing Sharp Management to produce names and contact information for the same. Plaintiffs further request that the Notice be sent to potential collective action members who worked for Sharp Management in New York during the past six years. Finally, Plaintiffs request a pre-motion discovery conference to discuss Sharp Management's failure to turn over contact information for employees who they allege are similarly situated to them.

Sharp Management opposes the motion, contending that plaintiffs have failed to show that they are similarly situated to other purported class members and object to the content of plaintiffs' proposed notice. In the alternative, Sharp Management requests that any collective action certified be limited only to non-supervisory superintendents at its Manhattan properties. Finally, Sharp Management contends that discovery of potentially similarly-situated employees' contact information is overly broad before collective action certification.

## BACKGROUND

### I.     Factual Background

The following facts are taken from plaintiffs' complaint and affidavits submitted in support of this motion. Both plaintiffs are former superintendent employees of Sharp Management. Plaintiff Fernandez worked at Sharp Management's 224 West 141st Street location in Manhattan from approximately March 2011 through December 7, 2015. ECF No. 22-1 (Fernandez Aff.) ¶ 3. Plaintiff Santana worked at Sharp Management's 55 West 129th location from May 2014 through December 7, 2015. ECF No. 1 (Compl.) ¶ 39; ECF No. 22-2 (Santana Aff.) ¶ 3. Both plaintiffs worked under the supervision of Sigfrido Martinez, an employee of Sharp Management. Fernandez Aff. ¶ 5; Santana Aff. ¶ 5. Plaintiffs had common work responsibilities, such as sweeping and mopping the buildings, removal of trash and recycling on

designated pickup days, taking care of minor building repairs, and addressing building work orders assigned to them by their common supervisor. Fernandez Aff. ¶ 6; Santana Aff. ¶ 6.

Both plaintiffs resided in an apartment in the respective buildings in which they worked, and were paid on a salary basis. Fernandez was paid $350 a week in exchange for his work, regardless of the number of hours he had in fact worked. Fernandez Aff. ¶ 9. He estimated that he worked an average of 91 hours per week. Id. ¶ 7–8. Santana was paid $500 week in exchange for his work, regardless of the number of hours he had in fact worked. Santana Aff. ¶ 9. He estimated that he worked an average of 86 hours per week. Id. ¶ 7–8. Both plaintiffs state that they are aware of other current and former superintendent employees who were also paid on a flat salary basis regardless of the number of hours worked. Fernandez Aff. ¶ 11; Santana Aff. ¶ 11.

As evidence of a uniform policy in regards to their employees' compensation, plaintiffs note several messages on Sharp Management's website. One page of the website promotes the Company's "Hands on Management" style: "Property managers visit each building daily in addition to being on 24 hour call in case of emergency. Repair and other expenses are made to yield maximum value at minimum cost." ECF No. 22 (Filosa Decl.) ¶ 8, ECF No. 22-5 (Website Ex. E). Another page states that all building employees are under the direct supervision of the Property Manager, and "personnel salaries are carefully controlled, in line with budgetary requirements." Filosa Decl. ¶ 9, ECF No. 22-6 (Website Ex. F).

## DISCUSSION

**I.      Conditional Collective Action Certification**

     **A.      Standard for Conditional Collective Action Certification**

Under the FLSA, a plaintiff may seek certification to proceed as a collective action, thus allowing other "similarly situated" employees the opportunity to join the litigation. 29 U.S.C. § 216(b); see also Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010). While FLSA § 216(b) does not reference certification explicitly, district courts have long utilized their discretionary power to provide notice to potential collective members. "Certification," in fact, is somewhat of a term of art: rather than creating a class of plaintiffs for a FLSA collective action, it serves as a "case management tool" to facilitate notice to *potential* class members. Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010) (citing Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).

While the FLSA does not define "similarly situated," it is widely recognized that the standard for conditional collective action certification is not a stringent one. Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 336 (S.D.N.Y. 2010); Iglesias-Mendoza v. La Belle Farm. Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). In this Circuit, there is generally a two-stage certification process for FLSA collective actions. Myers, 624 F.3d at 554–55 (2d Cir. 2010). The first stage—the conditional certification at issue here—requires only a "modest factual showing" based on the "pleadings and affidavits" that the putative class members were "victims of a common policy or plan that violated the law." Cardenas v. AAA Carting, 12-CV-7178 (VB), 2013 WL 4038593, at *1 (S.D.N.Y. Aug. 9, 2013) (quoting Sbarro, 982 F. Supp. at 261). "In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims." Hamadou v.

Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013). In the second stage of the framework, where the court has a "fuller record" to work with, a defendant can move to decertify if discovery reveals that the claimants are not similarly situated. Myers, 624 F.3d at 555.

This burden is necessarily "a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." Id. Nevertheless, the burden is not non-existent and "cannot be satisfied simply by unsupported assertions or with conclusory allegations." Sanchez v. JMP Ventures, L.L.C., No. 13-CV-7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (internal quotations omitted). Accordingly, while courts in this Circuit have routinely granted conditional collective certification on thin records, including those "based solely on the personal observations of one plaintiff's affidavit," see, e.g., Hernandez v. Bare Burger Dio Inc., No. 12-CV-7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases), they have also required some "concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions." Mata v. Foodbridge LLC, No. 14-CV-8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015). Therefore, courts have withheld conditional collective certification when submissions did not have any allegations regarding the specific hours worked or amounts paid to other employees. See, e.g., She Jian Guo v. Tommy's Sushi Inc., No. 14-CV-3946 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014).

    **B.**    **Plaintiffs' Factual Showing in Support of Conditional Certification**

        **1.**    **Plaintiffs' Proposed Collective Action for All Salaried Job Categories**

In this case, plaintiffs have failed to meet their modest burden for conditional collective action certification with regards to the broader class of job categories sought, including Resident Managers, Assistant Maintenance Personnel, Security Staff, Janitors, Porters, and "any other similar job titles" paid on a salary basis. As set forth above, plaintiffs, both of whom are

5

superintendents, have submitted two virtually identical affidavits, differing only in the number of hours worked, weekly remuneration, and job site addresses. Fernandez Aff.; Santana Aff.. The only evidence from these affidavits that a companywide "common policy or plan" applicable to all job categories exists is plaintiffs' statements that "[i]n addition to myself and [the other plaintiff], I know that there are other current and former employees of Sharp Management that worked as Superintendents and other similar jobs that were paid the same as me – that is, they were also paid a flat weekly salary regardless of the amount of hours that they actually worked." Fernandez Aff. ¶ 11; Santana Aff. ¶ 11. Notably, plaintiffs fail to state the names, salary rates, working hours, job sites, or titles of any current or former non-superintendent employees of Sharp Management, or articulate any basis for their knowledge that such employees are salaried and do not receive overtime pay.

This evidence is not sufficient to meet the plaintiffs' burden of proof to conditionally certify a collective action including non-superintendent employees with job titles different from those of plaintiffs. Though plaintiffs presumably relied on observations and conversations with coworkers to discover the existence of an alleged company-wide salary policy, they "[do] not . . . provide *any* detail as to a *single* . . . observation or conversation" which would substantiate their knowledge. Sanchez, 2014 WL 465542, at *2 (emphasis in original). Information about "where or when these observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed class and notice process." Id.; see also Ikikhueme v. CulinArt, Inc., No. 13-CV-293 (JMF), 2013 WL 2395020, at *2–3 (S.D.N.Y. June 3, 2013) (denying conditional certification motion premised only on a plaintiff's personal declaration containing "unsupported assertions" regarding other employees). Simply put, the Plaintiffs' evidence provides the Court with no objective criteria for determining whether Sharp

Management has a "common plan or policy" with regard to any job title except their own, much less all the job titles plaintiffs are seeking to include in their collective action.

The Court stresses that it is not the number of affidavits which is at issue; a single affidavit providing some basis for an inference that a company-wide policy exists could be sufficient to grant conditional certification. See, e.g., Garcia v. Spectrum of Creations Inc., 102 F. Supp. 3d 541, 548 (S.D.N.Y. 2015) (granting certification on the basis of two declarations listing the names and job titles of 15 co-workers with whom the plaintiffs spoke); Ramos v. Platt, No. 13-CV-8957 (GHW), 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014) (granting certification on the basis of one declaration referencing conversations with seven co-workers, several of whom were identified by name); Romero v. La Revise Assocs., L.L.C., 968 F. Supp. 2d 639, 645–46 (S.D.N.Y. 2013) (granting certification on the basis of one plaintiff's declaration, based on personal observation of defendants' policy of engaging in various violations of the FLSA with respect to all other tipped employees). The plaintiffs' affidavits do not have the specificity and detail that our caselaw requires to extend conditional certification beyond their own job title.

Plaintiffs also contend that the claim on Sharp Management's website that "personnel salaries are carefully controlled, in line with budgetary requirements" demonstrates that the company implements a common policy towards remuneration, and that this policy is the no-overtime, flat salary rate that allegedly violates the FLSA and NYLL. But this statement comes not from a human resources or employment manual, but a marketing-oriented website, and it is sufficiently general that it could refer to any number of personnel practices. As Sharp Management argues, the website cited by plaintiffs does not indicate whether all employees are classified as exempt or non-exempt from FLSA, that work hours and overtime are tightly

controlled, or even that all employees are paid on a salary as opposed to an hourly basis. Therefore, plaintiffs cannot find support for their allegation that Sharp Management applies a common policy to all of its employees based on the non-specific claims on the website.

Just as plaintiffs have failed to provide sufficient evidence to justify the inclusion of all the job categories they seek to provide notice to, they have not offered a sufficient basis for the territorial scope of the collective that they request be conditionally certified. For an action as geographically expansive as the one which plaintiffs propose, potentially covering over one hundred properties in four states, particularized evidence that the practice in question occurred systematically across Sharp Management's properties would plainly be necessary. See, e.g., Anjum v. J.C. Penney Co., No. 13-CV-460 (RJD)(RER), 2015 WL 3603973 (E.D.N.Y. June 5, 2015) (finding that affidavits from sales associates from two stores could not justify a certification of a statewide collective action); Ikikhueme, 2013 WL 2395020, at *1–2 (denying conditional certification because plaintiff's claims, arising from a single location, could not establish a factual nexus with approximately 200 different locations across the country); Guillen v. Marshalls of MA, Inc., No. 09-CV-9575 (LAP)(GWG), 2012 WL 2588771, at *1–2 (S.D.N.Y. July 2, 2012) (denying conditional certification because a "handful" of affidavits recounting "individual incidents" could not form a factual nexus between plaintiff's claims and the claims of thousands of other employees nationwide); cf. Morris v. Lettire Construction Corp., 896 F. Supp. 2d 265, 271 (S.D.N.Y. 2012) (granting certification of a collective action covering all job sites when plaintiffs had worked at various sites under same policy and presented statements from the company's CEO suggesting a uniform policy).

**2.     Collective Action for Manhattan Superintendents Only**

Even though plaintiffs have not met their burden with regards to Resident Managers, Assistance Maintenance Personnel, Security Staff, Janitors, Porters, or "any other similar job title," they have made the requisite "modest showing" with regards to their own job title of superintendent. At the conditional certification stage, the Court should draw all inferences in favor of the plaintiffs. Mendoza v. Ashiya Sushi 5, Inc., No. 12-CV-8629 (KPF), 2013 WL 5211839, at *4 (S.D.N.Y. Sept. 16, 2013) (citations omitted). Even though the plaintiffs work on different job sites in Manhattan and were compensated at a different rate, they have both alleged that they were paid on a flat salaried basis without regards to the number of hours worked in violation of the FLSA. Fernandez Aff. ¶ 7–9; Santana Aff. ¶ 7–9. They further assert that they are aware of other current and former superintendent employees of Sharp Management who were compensated in the same fashion. Fernandez Aff. ¶ 11; Santana Aff. ¶ 11. Courts do "not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations" at the first stage. Korenblum v. Citigroup, Inc., No. 15-CV-3383 (JMF), 2016 WL 3945692, at *2 (S.D.N.Y. July 19, 2016). Taking all of the plaintiffs' evidence to be true, they have presented sufficient, though far from overwhelming, evidence to support an inference that other superintendents in the employ of Sharp Management are subject to a "common plan or policy" and are thus "similarly situated."

Sharp Management has requested that, in the event that a collective action be conditionally certified, that the scope of certification be limited to "non-supervisory" superintendents, arguing that the fact that certain superintendents take on additional supervisory tasks indicates that they are not "similarly situated" to plaintiffs. But the key question is not whether potential collective members' job duties were identical to that of plaintiffs. Rather, it is

whether "they were subjected to the same alleged unlawful policy that violated the FLSA." Schwerdtfeger v. Demarchelier Mgmt., Inc., No. 10-CV-7557 (JGK), 2011 WL 2207517, at *4 (S.D.N.Y. June 6, 2011). In the event that supervisory superintendents are eligible for an exemption from FLSA because they are deemed to be "executive employees" under 29 U.S.C. § 213(a)(1) or any other applicable exemption, they would cease to be "similarly situated" to plaintiffs. Making such a determination, however, would require a detailed examination of the merits of the case. The first stage of conditional certification is not the appropriate time to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations." Pippins v. KPMG LLP, No. 11-CV-0377 (CM)(JLC), 2012 WL 19379, at *12 (S.D.N.Y. Jan. 3, 2012) (quoting Lynch v. United Services Auto Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). "If the process of discovery reveals that the named plaintiffs are not "similarly situated" [to opt-in plaintiffs], the court may then decertify the class as needed . . . ." Benitez v. Demco of Riverdale, LLC, No. 14-CV-7074 (CM), 2015 WL 3780019, at *6 (S.D.N.Y. June 15, 2015). Accordingly, at this preliminary stage, it is appropriate to include all superintendents in the conditional certification, regardless of whether Sharp Management classifies them as supervisory or non-supervisory.

     As regards the geographic scope of the certification, Sharp Management requests that any conditional collective action certification be limited to its properties in Manhattan. Plaintiffs have provided affidavits from only two superintendents, both of whom are employed within the borough of Manhattan. There is no evidence in the record that plaintiffs had any interaction with or personal knowledge of the salary structure of any employees outside Manhattan or that Sharp Management applied uniform salary practices across its entire operations. Therefore, I find that

any factual predicate for expanding the collective action beyond Sharp Management's property in Manhattan is lacking, and the reach of the proposed notice should be narrowed accordingly.

For the foregoing reasons, plaintiffs' motion to conditionally certify and issue court-facilitated notice is GRANTED as to superintendents who work or have worked at Sharp Management's properties in Manhattan from a period starting three years before the filing of the Complaint to the present and DENIED as to all Resident Managers, Assistance Maintenance Personnel, Security Staff, Janitors, Porters, and employees with "any other similar job title" paid on a fixed salary, as well as superintendents who have not worked in Manhattan in the applicable period.

## II. Form and Content of the Proposed Notice

Plaintiffs have proposed a notice based on the model employment discrimination notice provided by the Federal Judicial Center. Ex. C. Sharp Management requested that the proposed notice include a statement to potential opt-in plaintiffs informing them that they would waive their right to liquidated damage under the NYLL by joining the collective action. Such a notice was mandated in a decision conditionally certifying a FLSA collective action, as New York state law prohibits any "action to recover a penalty" in a class action unless the statute creating such penalty explicitly authorized it. Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 332 (S.D.N.Y. 2010) (analyzing N.Y. CPLR § 901(b)). But after this decision was issued, the Supreme Court ruled that N.Y. CPLR § 901(b) is preempted by Federal Rule of Civil Procedure 23 in all federal proceedings. Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010). Therefore, plaintiffs have not disclaimed and need not disclaim their right to pursue liquidated damages under the NYLL by seeking to proceed on such claims on a class

basis in federal court, and the statement that Sharp Management urges the Court to mandate is inappropriate.

Under the FLSA, the statute of limitations is three years for willful violations and two years for non-willful violations. 29 U.S.C. § 255(a). When willfulness is disputed, courts typically apply the three-year limitations period in defining the scope of a collective action. See, e.g., Hamadou, 915 F. Supp. 2d at 668. The plaintiffs have pled willfulness in this case. Compl. ¶ 50, 55. The Court notes that while the proposed notice itself covers all individuals employed by Sharp Management during the previous three year period, Ex. C, plaintiffs request a six year notice period for all individuals employed in New York, because NYLL claims are subject to a longer statute of limitations period.

As the Court is conditionally certifying a reduced collective consisting only of building superintendents, there is some question whether some or all opt-in plaintiffs fall within the definition of "janitor" under the Minimum Wage Order for the Building Service Industry. N.Y. Comp. Codes R. & Regs. tit. 12, § 141-3.4; see Koljenovic v. Marx, 999 F. Supp. 2d 396 (E.D.N.Y. 2014) (finding that building superintendents were "janitors" under the definitions of the Minimum Wage Order). In the event that opt-in plaintiffs are found to be janitors, they would not be entitled to overtime rates, N.Y. Comp. Codes R. & Regs. tit. 12, § 141-1.4, and would be entitled to a per-unit minimum rate instead of an hourly minimum wage. N.Y. Comp. Codes R. & Regs. tit. 12, § 141-1.3. As such, though in certain cases some courts in this District have decided that a six-year notice period is warranted for conditionally certified collective actions involving NYLL claims, see, e.g.,Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012), given the potential difficulties with plaintiffs' NYLL claims, a three-year notice period is appropriate. "To the extent the Plaintiffs seek to provide notice to potential

plaintiffs that fall outside of the putative FLSA class, but may have claims under the N.Y. Labor Law, they must follow the discovery and notice procedures applicable to class actions under the Federal Rules of Civil Procedure." Alvarez v. IBM Restaurants Inc., 839 F. Supp. 2d 580, 587 (E.D.N.Y. 2012).

Notice would normally be provided to those employed within three years of the date of the notice. *See* 29 U.S.C. § 255(a); Winfield, 843 F.Supp.2d at 410. "However, because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, 'with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" Id. (quoting Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y.2011)). Therefore, in this case, the three-year period for notice will be calculated from the date of filing of the complaint.

As no other issues regarding the proposed notice have been raised, the parties are ordered to confer and make a good-faith effort to agree to the text of the proposed notice within two weeks of the date of this Opinion & Order.

## III.   Production of Information

Within 30 days, Sharp Management shall produce the names, phone numbers, email addresses and last known mailing addresses of all superintendents who have been in its employ at sites in Manhattan during the three-year period preceding the date of the filing of this complaint.

## CONCLUSION

The plaintiffs' motion for conditional certification of a collective action and court-authorized notice pursuant to section 216(b) of the FLSA is GRANTED IN PART AND

DENIED IN PART. The collective to be noticed includes all superintendents who have worked for Sharp Management in Manhattan at any time over the three years preceding the filing of this complaint.

The parties are to meet and confer and jointly submit the text of the proposed notice within two weeks of the date of this Opinion & Order. If any disagreements remain, the parties should submit their alternative language to the Court by the same date.

Sharp Management is ordered to produce the names, phone numbers, email addresses and last known mailing addresses of all superintendents who have been in its employ at sites in Manhattan during the three year period preceding the filing of this complaint within 30 days of this Opinion & Order.

The Clerk of Court is directed to terminate the motions at Dkt. No. 19 and 30.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
         October 13, 2016